[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this dissolution action, the parties have agreed that their marriage of almost thirty-two years has irretrievably broken down and that no hope exists for a reconciliation. The three children of the marriage are adults. The areas of dispute between the parties concern the plaintiff's claims for alimony, a division CT Page 8214 of property and an attorney's fee.
 I.
In its determinations of whether alimony should be ordered, how property should be divided and whether an attorney's fee should be awarded, the court must consider the provisions of General Statutes 46b-81(c)[1], 46b-82[2] and 46b-62[3]. It is well-settled, however, that the court's decision need not repeat each statutory provision. Nor does each provision have to be the subject of an express finding or be given equal weight. Stephens v. Stephens, 22 Conn. App. 337, 339 (1990); Miller v. Miller,22 Conn. App. 310, 314 (1990).
Pursuant to the statutory provisions, the court finds that the following facts were established. The parties were married at Three Rivers, Quebec, Canada on October 15, 1960. After a one-day honeymoon in Montreal, they came to Waterbury where the defendant's parent's resided. They have lived in Waterbury since their arrival at first renting and subsequently owning their home. Despite the length of the marriage and the rearing of three children, the union of the plaintiff and defendant has not been a happy one. The defendant isolated himself from family responsibilities. He was violent toward the plaintiff and subjected her to physical as well as verbal abuse. This pattern of conduct went on for years. On February 21, 1991, the plaintiff moved from the family residence. The court credits her testimony that "[she] couldn't take it any more."
The residence from which the plaintiff moved is a 6-room,1-1/2 bath single family raised ranch located at 85 Woodmere Road, Waterbury. Additional features are a fireplace, an enclosed rear porch and a finished "in-law" type apartment in the basement. Title to the premises is in the names of both the plaintiff and the defendant, and has been since they purchased the property on September 22, 1978 for $43,820.00. At present, according to the parties' stipulation predicated upon a professional appraisal, the value of the residence is $135,000.00. Yearly real estate taxes are $2,170.01 and there is a mortgage in the approximate amount of $26,400.00[4].
The purchase of the house at 85 Woodmere Road was accomplished in great part by the sale of the parties' previously owned home at 35 Niagara Street, Waterbury. Probably, if funds were traced, it would be found that the defendant was the main contributor in the purchase of the Niagara Street property in that he has always been the principal wage earner. The plaintiff, however, also has worked outside of the home during much of the marriage. Not only is 85 Woodmere Road the abode of the defendant, and formerly of the plaintiff, two of their three adult CT Page 8215 children also reside there. The plaintiff's present residence is a two-room apartment at 48 Craftwood Road, Waterbury.
When the plaintiff moved from 85 Woodmere Road, she took with her, the parties' dining and bedroom furniture, her clothing and a few kitchen utensils. She purchased a sofa and end table in her own name from Levitz Warehouse Showroom for $828.36. Subsequently she charged a VCR to the parties' joint account at the Radio Shack in the amount of $422.69. Now, she requests to be given the following items that are located in the marital residence: The stereo and all its components including record player, radio, tape player, C.D.'s; the pictures on the walls of the livingroom and hallway; the shelf in the den with the knick-knacks on it; a christening outfit made from her wedding dress and the baby clothes; her three-speed bicycle; her exercise pad; a trunk that she had prior to her marriage which is in the garage and used to store blankets; the rest of her clothing and shoes located in the closet in the sewing room; her snapshots and photographs; the folding table on the porch; the box and contents under the love seat in the den; and the Norman Rockwell doctor and child picture.
The parties are joint owners of a 1988 Honda Accord motor vehicle. The plaintiff requests that title to the Honda be placed in her name only. There are two vehicles that are either in the defendant's name or to which the plaintiff makes no claim: a 1987 Chevrolet van and a 1986 Toyota pickup. There is also a 1988 Sears World boat.
Both parties are gainfully employed. The plaintiff works for Lerners, a nationally known operator of dress shops, in Meriden as an associate manager. Her weekly net salary is $249.15. Included in her deductions from gross weekly wages is $5.00 for Lerner's stock plan. But, at the time of trial, her stock interest was only .7048 shares which amounted to $20.00. The defendant has been employed by National Die Company for thirty-one years. His net salary is $456.35 per week. As incidents of his employment, the 53 year old defendant has a pension plan. The current cash value of which is $27,049.00, two term life insurance policies totalling $97,000.00, sick and accident insurance for 13 weeks providing 60% of 40 hours earnings and a health insurance program for himself and his spouse with Blue Cross/Blue Shield. The 51 year old plaintiff reported a payroll deduction of $10.00 per week to pay for health insurance but her policy is not as comprehensive as the defendant's Blue Cross-Blue Shield plan. Good health is enjoyed by the defendant. The plaintiff, however, has degenerative disc troubles which makes the lifting of objects painful. Her back problem was exacerbated by involvement in a motor vehicle accident on January 25, 1991.
Reported as assets in the plaintiff's affidavit are the CT Page 8216 following items: jointly owned real estate valued at $135,000.00 on which there is a mortgage of $28,000.00 so that the equity is $107,000.00; a 1988 Honda Accord valued at $9,000.00 on which there is a loan of $1,000.00 so that the equity is $8,000.00; a checking account in First Federal Savings Loan Association of $200.00; the stock interest in Lerners of $20.00 and a policy of life insurance with Allstate in the face amount of $50,000.00 with a cash surrender value of 0. The defendant's affidavit reports his assets as: jointly owned real estate valued at $135,000.00 on which there is a mortgage of $27,600.00 for an equity of $107,400.00; a Honda Accord valued at $5,500.00 on which there is a loan for $5,500.00 making the equity 0; a 1986 Toyota pick-up valued at $1,600.00; a 1987 Chevrolet van valued at $1,500.00 and a 1988 Sears World boat valued at $13,000.00 on which there is a loan of $9,700.00 for an equity of $4,800.00; a savings account of $32,000 and a checking account of $275.00 both at Centerbank; a $50,000.00 life insurance policy with Allstate of which the cash value is $6,853.11, his pension plan valued at $22,774.00 and an Allstate IRA containing a $16,049.22 now increased to $17,500.00. The court has eliminated household furnishings from the assets of both parties because of the widely disparate and totally unsupported claims as to value. The plaintiff estimated that the furniture she took from the residence supplemented by what she purchased is worth $10,000.00 and contends that the furniture remaining in the residence with the defendant has a replacement value of $25,000.00. The defendant lists his miscellaneous furnishings as being worth only $500.00.
Of greater concern than any disagreement about the worth of household furnishings are the charges and counter charges concerning the misappropriation of monies. When the plaintiff moved from the marital residence, she left passbooks for jointly owned checking and savings accounts and a jointly owned certificate of deposit totaling more than $15,000.00. The defendant cashed the certificate of deposit and transferred the bank accounts to his own name. As shown on his affidavit filed on March 27, 1992, the bank accounts have been reduced to miniscule sums. The defendant testified that they were used to pay bills. Yet the joint debts of the parties as listed in the various affidavits filed by the defendant do not demonstrate any substantial reduction. During the defendant's cross examination of the plaintiff, she admitted that within six months of leaving the defendant, she had made withdrawals from the joint savings account that together amounted to $11,000.00. As with the defendant, the plaintiff was unable to account for the amounts that she withdrew.
Some other features concerning income and assets were learned from testimony but did not appear in the defendant's affidavit. The son of the parties who lives at 85 Woodmere Road pays the CT Page 8217 defendant $80.00 per week for household expenses and the daughter who lives here contributes $25.00 per week for the same purpose. The defendant borrowed $7,000.00 on his Allstate insurance policy and had the money in his possession.
Neither the plaintiff nor the defendant was able to explain why the plaintiff's Allstate policy was cancelled without any rebate of cash value. For economic reasons, the plaintiff, on leaving the defendant, had to redeem her IRA wherein $3,000.00 had been on deposit.
 II.
Most Connecticut decisions typify situations where one or a few of the provisions enumerated in 46b-81(c) and 46b-82 have been predominant. See e.g. Emanuelson v. Emanuelson, 26 Conn. App. 527,532 (1992) (cause of the breakdown of the marriage; Ridolfi v. Ridolfi, 178 Conn. 377, 379 (1979) (length of the marriage); Basile v. Basile, 185 Conn. 141, 143 (1981) (health, vocational skills); McGuiness v. McGuiness, 185 Conn. 7, 10 (1981) (health). As previously stated, the various factors do not have to be given equal weight. "Our case law is clear that a trial court is free to weigh the relevant statutory criteria without having to detail, in its memorandum of decision, what importance it has assigned to the various statutory factors." Tutalo v. Tutalo, 187 Conn. 249, 252 (1982).
All of the factors in 46b-81(c) and 46b-82 have been considered. The marriage of the parties is dissolved. In the exercise of what has been described as its "vast discretion," Damon v. Damon, 23 Conn. App. 111, 114 (1990), the court enters the orders set forth below as incident to the dissolution.
The plaintiff's maiden name is restored to her. Henceforth, she shall be known as Giselle Massicotte.[5]
Within six months from the date of this memorandum, the defendant shall arrange to pay for the plaintiff's undivided one-half interest in the marital residence at 85 Woodmoere Road, Waterbury. The value of the plaintiff's interest shall be computed as one-half the difference between the then existing mortgage debt and the appraised value of $135,000.00. Upon tendering the proper amount, the defendant shall be entitled to a quitclaim deed of the plaintiff's undivided one-half interest. Until the defendant tenders the proper amount and receives the deed from the plaintiff, he shall continue to pay all the monthly mortgage payments and be responsible for insurance payments and for taxes whether accruing or payable.
The plaintiff shall keep as her own the bedroom and dining CT Page 8218 room furniture and whatever other items she has removed from the marital residence. Further, she is entitled to remove from said residence the articles detailed above that she requested. All other furniture and related property of the parties that is located in the marital residence shall be owned solely by the defendant.
The defendant is directed to provide whatever documents are required to transfer title to the 1988 Honda Accord into the single ownership of the plaintiff. The court accepts the plaintiff's representation that only $1,000.00 is owed on the Honda Accord and orders that the defendant accompany his documentation with $1,000.00 so that the plaintiff's title will be unencumbered. If the plaintiff holds any title or interest in the 1987 Chevrolet van, the 1986 Toyota pickup or the 1988 Sears World boat, she shall transfer such interest to the defendant by appropriate documentation.
Until the plaintiff dies, remarries or cohabits with another person, which ever shall first occur, she is entitled to periodic alimony during the lifetime of the defendant. In the period before the defendant pays for the plaintiff's interest in the jointly owned marital residence, the amount of such alimony shall be $125.00 per week and thereafter $100.00 per week unless and until the weekly sum may be increased or decreased by a court. In determining the weekly amounts, the court has given primary consideration to the needs, vocational skills, employability, sources of income and needs of the parties. Enforcement of the defendant's obligation to pay periodic alimony shall be accomplished by the immediate issuance of an execution against his wages pursuant to General Statutes 46b-69a. Any delinquencies in payment of the pendente lite order for alimony shall be rectified by the defendant.
In addition to the weekly alimony payments, the defendant shall provide coverage for the plaintiff on his current medical/hospital plan maintained by his employer with Blue Cross-Blue Shield. The coverage for the plaintiff shall be provided so long as it is available through his employment and for the maximum period permitted by 29 U.S.C. § 1162(2)(A). When this time period expires, the plaintiff will be responsible for her own medical/hospital coverage.
The defendant is ordered to make the plaintiff the irrevocable beneficiary of the $50,000.00 life insurance policy that he maintains with Allstate Insurance Company provided she shall survive him. The policy must be kept current and during the plaintiff's lifetime the defendant is prohibited from obtaining loans on the policy over and above the $7,000.00 that he recently borrowed. Any interest that may become due on the borrowed CT Page 8219 $7,000.00 shall be paid promptly by the defendant and shall not be allowed to accrue against the cash surrender value or the ultimate proceeds of the policy. In addition, the defendant is ordered to transfer to the plaintiff the sum of $6,400.00 from his IRA. The orders whereby the plaintiff has been made the beneficiary or has been given certain personal property of the defendant have been premised upon all of the factors of 46b-81(c) including a finding that when the parties were living together they deposited their incomes in common bank accounts.
The plaintiff shall be responsible for and hold the defendant harmless on all of the liabilities listed in her affidavit dated March 31, 1992 and for the amount of the post-separation purchases that she made at Radio Shack and at Levitz Warehouse Showroom. The defendant shall be responsible for and hold the plaintiff harmless on all of the liabilities listed in his affidavit dated March 31, 1992, for the mortgage, taxes and insurance on 85 Woodmere Road, for the loan on the boat and for any unlisted debts that might constitute joint or joint and several obligations of the parties.
General Statutes 46b-62 provides that an award of an attorney's fee should be based upon the respective financial abilities of the parties and upon the criteria used for the determination of alimony. Emanuelson v. Emanuelson, supra at 532-33. The Supreme Court has separated awards of an attorney's fee into three categories: (1) those cases where a denial of an award would be an abuse of discretion in that requiring a party to pay all or part of his or her counsel's fees would substantially undermine the other awards ordered for that party; (2) the broad spectrum of cases in which the granting or denial of counsel fees is in the court's discretion and (3) those cases where because of other orders the potential recipient has ample liquid funds so that an award of an attorney's fee would be an abuse of discretion. Turgeon v. Turgeon, 190 Conn. 269, 280-81 (1983).
The court's view is that the other awards given to the plaintiff are not so extensive so that a denial of her request for an attorney's fee would substantially undermine them. In any event, the length of the marriage and the responsibility of the defendant for its breakdown coupled with the disparity in the parties' assets would put this case at least into the second of the three categories. See Eslami v. Eslami, 218 Conn. 801, 820
(1991); Emanuelson v. Emanuelson, supra at 533. The court concludes that $4,000.00 is a reasonable attorney's fee and orders the defendant to pay it.
 III.
Within two weeks, the plaintiff's attorney shall prepare and CT Page 8220 submit a judgment file for the court's scrutiny. Except for the defendant's buyout of the plaintiff's interest in the marital residence for which six months has been allowed, the remaining obligations imposed by this memorandum shall, depending on their nature, begin or be completed by three weeks from the date of this decision notwithstanding that the judgment file may not, as of yet, been approved or placed on record in the Clerk's Office.
BARNETT, J.